*244 ORDER (Guardianship Designation)
JOAN GREENDEER-LEE, Associate Judge.
On May 13, 1998, the petitioner requested that the Ho-Chunk Nation Trial Court make a formal guardianship appointment on behalf of Choice A. Deeorah. Choice Decorah was about to become or recently became 18 years, thus eligible to access his minor trust funds in the amount of $25,628.77. The petitioner had reason to believe that Choice had limited mental capacity and was unable to handle a large sum of money. The Court has found that sufficient evidence and testimony indicate Choice A. Decorah has mental and physical limitations to be considered an adult incompetent. Therefore, the Court has determined the Nation maintain an adult incompetent trust fund account on Choice A. Decorah’s behalf. Furthermore, this Court finds Wanda Decorah, grandmother and custodian of Choice Decorah, shall serve as his guardian for matters of health, education and welfare, particular in petitioning this Court for access of the ward’s trust fund account.
APPLICABLE LAW
ART VII. Sec 5. Jurisdiction of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be *245 construed to be a waiver of the Nation’s sovereign immunity.
ART VII. Sec 6. Powers of the Tribal Court.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
HCN Amended and Restated Per Capita Distribution Ordinance (July 1997) Section 6.01 Minors and other legal inc.om-petents.
(a) The interests of minors and other legally incompetent Members, otherwise entitled to receive per capita payments, shall in lieu of payment to such minor or incompetent Member, be disbursed to a Children’s Trust Fund which shall be established for each such member. The Ho-Chunk Nation shall establish a formal irrevocable legal structure for such CTFs approved by the Nation’s Legislator as soon after passage of the Ordinance as shall be practicable, with any amounts currently held by the Nation for passage for the benefit of minor and legally incompetent Members, and all additions thereto pending approval and establishment of such formal irrevocable structure, to be held in an account for the benefit of each such Member-beneficiary under the supervision of the Trial Court of the Nation. Trust assets of such CTFs shall be invested in a reasonable and prudent manner which protects the principal and seeks a reasonable return. The trust assets of each such account maintained for a minor shall be disbursed to the Member-beneficiary thereof upon reaching the age of eighteen (18); provided that, this provision shall not operate to compel disbursement of funds to Members legally determined to be incompetent.
(b) Funds in the CTF of a minor or legally incompetent member may be available for the benefit of a beneficiary’s health, edmation and welfare ivhen the needs of such person are not being met from other Tribal funds or other state or federal public entitlement program, and upon a finding of special need by the Ho-Chunk Nation Trial Court. In order to request such funds, (1) a written request must be submitted to the Nation’s Trial Court by the beneficiary’s parent or legal guardian detailing the purpose and needs for such funds, and; (2) the parent or legal guardian shall maintain records and account to the Trial Court in sufficient detail to demonstrate that the funds disbursed were expended as required by this Ordinance and any applicable federal law, and; (3) any other standards, procedures and conditions that may be subsequently adopted by the Legislature consistent with any applicable federal law shall be met.
Id. (Emphasis added).
FINDINGS OF FACT
1. Choice A. Decorah is an enrolled member of the Ho-Chunk Nation, tribal id. # 439A004350.
2. Choice A. Decorah (d.o.b. 03/18/80) lives with his maternal grandmother, Wanda Decorah in Wisconsin Dells, Wisconsin.
3. Choice A. Decorah’s mother is Jeanette Decorah. No one was declared the father for this matter.
4. On or about April 17, 1998, a meeting occurred between the Ho-Chunk Nation Enrollment Department and Choice *246 Decorah, Wanda Decorah and two other unidentified family members.
5. Based on the April 17, 1998 meeting, the petitioner believed Choice Decorah was not capable of handling the lump sum disbursement of $25,628.77 after he turns 18 years of age. Also, Wanda Decorah said she was designated as Choice’s guardian but Wanda Decorah offered no legal documentation supporting this assertion. (See Affidavit by Janice Swiggum and Affidavit by Kari Kihlay)
6. On or about May 13, 1998, the petitioner requested the Court to impound the per capita for Choice Decorah until questions about his competency could be answered.
7. During the June 25, 1998 Hearing, Ms. Wanda Decorah testified that she is the payee for Choice regarding Social Security Income (SSI) Benefits.
8. During the July 13, 1998 Hearing, Ms. Wanda Decorah provided the Court with a letter indicating that the SSI benefit was stopped because the Social Security Administration (SSA) understood that Choice A. Decorah received trust fund money after he turned 18 years old. She further testified that Choice had not received three months of SSI benefits because of this pending proceeding.
9. On or about July 13, 1998, the Court appointed Ms. Tracey L. Schwalbe as guardian ad litem for Choice A. Decorah.
10. During the September 16, 1998 Hearing, Wanda Decorah said she did not want trust fund money for Choice A. Deco-rah if this would cut off his SSI benefit and receiving Medical Assistance(MA) coverage. He needed MA coverage because he is practicing for the Special Olympics.
11.On September 15, 1998, Guardian ad litem Schwalbe filed a report regarding Choice A. Decorah’s competency based on information and belief from Choice’s school records, a school psychologist’s affidavit,[1] and the interview with Wanda Decorah. Ms. Schwalbe was unable to gain information from the SSA at the time of her report.[2]
DECISION
Pursuant to the HCN Amended and Restated Per Capita Distribution Ordinance (July 1997), Sec. 6.01
The Ho-Chunk Nation shall establish a formal irrevocable legal structure for such CTFs approved by the Nation’s Legislature as soon after passage of the Ordinance as shall be practicable, with any amounts currently held by the Nation for passage for the benefit of minor and legally incompetent Members, and all additions thereto pending approval and establishment of such formal irrevocable structure, to be held in an account for the benefit of each such Member-beneficiary under the supervision of the Trial Court of the Nation.
The Court had to make a determination, in the best interest of Choice A. Decorah, who has been determined to have mental limitation, whether his per capita distribution shall remain in an adult incompetent trust fund account. Upon such action *247 deemed appropriately, the Court must also designate a guardian to handle Choice’s trust fund account.
The original petition alluded to Choice Decorah’s inability to handle a large sum of money. In fact, this Petition was instigated by address verification form (usually signed by the adult tribal member) submitted by the Choice Decorah family and a follow up meeting between Choice Decorah family and the HCN Enrollment Department. The Address Verification Form was signed by Wanda Decorah, without any indication of legal guardianship, power of attorney or authority to do so on Choice’s behalf. The discussion at the meeting led the Enrollment Department staff to be concerned about Choice’s ability to handle the large sum of money. (See Affidavit by Janice Swiggum and Affidavit by Kari Kilday)
In the past, the Court has relied on medical or legal documentation which previously concluded such tribal member’s mental incapacities. At the onset of this case, no such records existed. It was difficult to obtain legal and/or medical documentations regarding Choice Decorah, possible guardianship designation from his family. However, in the hearings of June and July 1998, testimony by Choice Deco-rah’s family indicated that Choice had mental disabilities to potentially warrant that the Court place Choice’s per capita distribution monies into a trust fund account. Choice attended one of the first hearings, and it was physically notable of the limitations he had with both speech and language. The family indicated that Wanda received SSI for Choice consistently until this trust fund issue arose. Additionally, the family indicated that Choice is participating in the Special Olympics swim team. The medically definitive information offered to this Court regarding the competency level of Choice A. Decorah was offered by the Guardian ad litem Tracey L. Schwalbe. Ms. Schwalbe interviewed the Wisconsin Dells School District Psychologist, Ms. Gail Webb.[3] In addition, Ms. Schwalbe was able to review Choice Decorah’s school records. The psychologist’s Affidavit and Psychological Report-Three Year Reevaiuation articulated that Mr. Decorah has been a special education student in the Wisconsin Dells School District since 1991. He has moderate to severe cognitive disabilities and speech/language that are unlikely to change in the future. In Ms. Webb’s opinion, ‘consideration should be made to protect Choice in medical and financial decisions as he would be turning 18 years in March 1993.’ In the testimony of Wanda Decorah, she confirmed that Choice does have mental and physical limitations. Based on the testimonies and evidence, the Court is convinced sufficient records exist to determine Choice lack competency to personally handle his financial and social matter on his own. In Choice’s best interest, this Court finds that his per capita distribution monies shall remain in the trust fund account.
Next, the Court must identify an adult who can serve as Choice’s guardian in this matter. In Ms. Schwalbe’s opinion Ms. Wanda Decorah is most appropriate individual in Choice’s life to be designated as his guardian. Counsel for the petition did not object. Ms. Wanda Decorah does not object to accepting the responsibilities since she has always eared for Choice.[4] *248 Therefore, this Court finds that Ms. Wanda Decorah shall be designated as legal guardian for Choice A. Decorah. Ms. Wanda Decorah shall exercise the legal responsibilities and obligations for tending to the health, education and welfare on Choice A. Decorah’s behalf. This responsibility includes but is not limited to, acting and petitioning for release of trust fund monies on Choice A. Decorah’s behalf.

. The Court sealed this record since it is confidential information. Only the present Guardian Ad Litem for Choice, Tracey Schwalbe, Choice A. Decorah, Wanda Deco-rah, and Counsel Todd Matha can request to review this report.

. During the September 16, 1998 Hearing, the Choice Decorah family filed a notice from the SSA stating that Wanda Decorah has served as Choice's representative payee since July 31, 1991. This SSA Report of Confidential Social Security Benefit Information was signed by an officer in the Portage, Wisconsin office.

. Ms. Webb is licensed by the Wisconsin Department of Public Instruction.

. The mother, Jeanette Decorah, filed a notice with the Court during the September 16, 1998 Hearing, indicating that her mother, Wanda Lee Decorah, was granted custody of Choice Allen Decorah on June 25, 1991 in Sawyer County, Wisconsin. Ms. Jeanette Decorah requested that her mother continue in custody of her son.